## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF KENTUCKY
## LEXINGTON DIVISION

| | | |
|---|---|---|
| BRET WEHRLY, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. _____ |
| | ) | |
| vs. | ) | |
| | ) | **COMPLAINT FOR TITLE VII** |
| ALLSTATE INSURANCE | ) | **AND KENTUCKY CIVIL RIGHTS** |
| COMPANY,   ) | | **ACT VIOLATIONS** |
| | ) | |
| Serve: CT Corporation System | ) | JURY TRIAL DEMANDED |
| 306 W. Main Street | ) | |
| Suite 512 | ) | |
| Frankfort, KY 40601 | ) | |
| | ) | |
| Defendant. | ) | |

Plaintiff Bret Wehrly, through his undersigned attorneys and for his Complaint against Allstate Insurance Company, states as follows

### **INTRODUCTION**

1. This is an action brought pursuant to Title VII of the United States Civil Rights Act of 1964, as amended, and the Kentucky Civil Rights Act ("KCRA") to obtain relief for Plaintiff Bret Wehrly ("Mr. Wehrly" or "Plaintiff") for unlawful employment practices of and a hostile work environment created by Allstate Insurance Company ("Allstate" or "Defendant") on the basis of Mr. Wehrly's religion and the exercise of his protected activities, and to provide appropriate relief to Plaintiff, an employee of Defendant who was adversely affected by such unlawful practices.

2. By this action Plaintiff seeks the following relief pursuant to Title VII and the KCRA: monetary relief, including back pay, front pay, compensatory damages, damages for mental and emotional distress, attorneys' fees, and costs of suit.

## JURISDICTION AND VENUE

3.      Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e-5(f)(3) and 28 U.S.C. §§ 1331 and 1343. Plaintiff's state law claim is properly before this Court pursuant to 28 U.S.C. § 1367(a) because that state law claim is so related to the claims in this action that are within the Court's original jurisdiction that they form a part of the same case or controversy under Article III of the United States Constitution. The Defendant is an entity capable of being sued under both federal and Kentucky law, and enjoys no immunity from the claims alleged in this Complaint.

4.      Venue is properly laid in this Court pursuant to 42 U.S.C. § 2000e-5(f)(3) and U.S.C. §§ 1391(b)(1), (b)(2), and (c) because it is a judicial district in which Defendant resides as well as a judicial district in which a substantial part of the events or omissions giving rise to the claims occurred.

## PARTIES

5.      Plaintiff, Bret Wehrly, is and was at all times pertinent to this action a citizen of the United States of America and a resident of Richmond, Madison County, Kentucky. At all times pertinent to this action, Plaintiff was an "employee" of Allstate within the meaning of 42 U.S.C. § 2000e(f) and K.R.S. § 344.030(5). At all times pertinent to this action, Plaintiff was qualified for the position he held at Allstate.

6.      Defendant, Allstate Insurance Company ("Allstate"), is a for-profit foreign corporation which, upon information and belief, is duly authorized to conduct and is conducting business in the Commonwealth of Kentucky.

7. Defendant Allstate may be served with process by service on CT Corporation System, 306 W. Main Street, Suite 512, Frankfort, KY 40601, which is Defendant's registered agent listed with the Commonwealth of Kentucky's Secretary of State.

8. Defendant Allstate is an employer subject to suit under 42 U.S.C.S. §§ 2000e *et seq.,* and the Kentucky Civil Rights Act, K.R.S. §§ 344.010 *et seq.*, in that Defendant is engaged in industry affecting commerce and has 15 or more employees for each working day of 20 or more calendar weeks in the year of, or preceding, the filing of this Complaint.

## ADMINISTRATIVE PROCEDURES

9. On or about October 10, 2018, Mr. Wehrly timely filed a Charge of Discrimination No. 24G-2019-00010 with the Equal Employment Opportunity Commission ("EEOC"). Charge No. 24G-2019-00010 was dual filed with the Kentucky Commission on Human Rights as KCHR Complaint No.: 8886-E. (Exhibit 1 - Charge of Discrimination). The KCHR dismissed the Complaint No. 8886-E on January 28, 2021. (Exhibit 2 - KCHR Dismissal Order). The EEOC issued its Dismissal and Notice of Rights letter on February 19, 2021, pursuant to which this Complaint has been timely brought. (Exhibit 3 - EEOC Dismissal and Notice of Rights).

## FACTS

10. Plaintiff is a Christian male who began his employment with Defendant Allstate in April of 1984 and from June 10, 2015, through the date of his termination on May 4, 2018 ("Subject Period"), held the position of Field Sales Leader for Allstate.

11. Until the "Subject Period," Mr. Wehrly had never been disciplined or otherwise reprimanded by Allstate during the more than thirty years of his employment with Allstate and had, indeed, received numerous awards and commendations for his excellent leadership, sales, and work record.

12. During the Subject Period, Plaintiff was under the direct supervision of, first, Allstate Territory Field Sales Leader ("TSL") Eric Harvey and, from mid-January 2017, Allstate TSL Leader Dallas Owen.

13. Plaintiff believes in and practices on a daily basis the Christian faith and believes that the *Holy Bible* is the Word of God, which he does his best to obey.

14. Plaintiff has a sincerely held religious belief that the Bible teaches that all forms of sex outside of marriage, including homosexuality and same-sex marriage, are immoral, a sin against God, and contrary to such teachings of the Bible as Leviticus 18:22, Romans 1:26-27, and 1 Corinthians 6:9.

15. Although Plaintiff believes LGBT conduct is a sin, he also believes he sins when he fails to obey the Bible's two greatest commandments: to love God with all his heart and to love his neighbor, including homosexuals, as himself. (Matthew 22:37-39).

16. During his Allstate employment, Plaintiff never had a complaint that he ever discriminated against any person in the provision of his services or in his employment decisions on the basis of the person being a member of the LGBT community.

17. Plaintiff has never been accused of refusing to sell Allstate policies of insurance to any person on the basis of that person being a member of the LGBT community.

18. On June 10, 2015, Allstate's company website, Allconnect (formerly, MyDesktop), promoted the LGBT community, posting a "Love Has No Labels" video that played continuously on the website's home page for approximately two weeks.

19. On June 10, 2015, Allstate's blog posting of "Allstate starts movement to join hands in support of LGBT message: Interactive social media program, amplified event presence enhance 'Out Holding Hands' Campaign" to promote Allstate's marketing campaign to encourage

members of the LGBT community "to create a global chain of love and acceptance by virtually joining hands" violated Plaintiff's sincerely held religious belief that he is commanded by God not to accept what he perceives to be sinful conduct.

20. It is Plaintiff's understanding that his comments on Allstate's LGBT blog were reviewed by Allstate Now editor and Allstate attorneys and allowed to stay in the blog posts since the comments were not offensive.

21. Allstate's June 10, 2015, blog posting encouraged readers to "Leave a Comment" about the posting.

22. Five days later, on June 15, Plaintiff did leave a comment, citing a Christian article from Gotquestions.org, expressing what Plaintiff believes to be the *Bible's* teaching on LGBT conduct. As well as the biblical viewpoint on the issue, his comment also discussed what he believes to be the historical and psychological arguments against homosexuality and gay marriage.

23. During the last two weeks of June, TSL Eric Harvey called Plaintiff several times, telling him that Harvey had been ordered by Allstate management, specifically by Regional Leadership (Senior Vice President Cynthia Whitfield and Regional Sales Leader Matt Phillips) in the Home Office to contact Plaintiff to ensure Plaintiff posted no further comments on the LGBT blog.

24. Then, on November 5, after a general marketing meeting for the region, Plaintiff's supervisor, Eric Harvey, spoke one-on-one to Plaintiff, warning him that Plaintiff's Leadership Skills were going to be down-rated to "Insufficient" in his 2015 Performance Development Summary ("performance evaluation").

25. When Plaintiff asked Harvey the reason for the "Insufficient" down-rating, Harvey told him that he could not be a leader at Allstate because of his comments about his religious beliefs concerning homosexuality and gay marriage on Allstate's LGBT blog.

26. On his February 29, 2015, performance evaluation, Eric Harvey did in fact down-rate to "Inconsistent" the section on Plaintiff's leadership qualities as he had warned the previous November he would do in response to Plaintiff's comments expressing his religious beliefs about homosexuality and gay marriage on Allstate's LGBT blog the previous June.

27. Plaintiff Wehrly responded to the 2015 performance evaluation with his rebuttal of his down-rated 2015 leadership performance evaluation, explaining:

> In a recent Checkpoint meeting, Eric stated that I would be rated insufficient for my Leadership qualities. I asked him why? He said because of my comments made on the Allstate Now -- LGBT blog. He gave no other reason. He went on to say that Allstate cannot have managers with my viewpoint about the LGBT. As noted in my PDS, I have been downrated in all categories of Leadership except one. Most of Eric's other comments are baseless. From a Christian perspective, it is offensive to flash the two week promotion of LGBT on a company web site each quarter. I posted Christian articles of the LGBT blog (in response) which were well written and gave the Christian viewpoint. It appears that Allstate wants to silence Christian voices.

28. The 2015 leadership "Inconsistent" evaluation of Plaintiff's leadership skills because of his religious comments made about Allstate's LGBT blog was false, malicious, hostile, unreasonable, and highly offensive in light of the following facts:

   a. At the time of the down-rated leadership evaluation, Plaintiff's personnel file contained no documentation of wrongdoing by Plaintiff;
   b. Although Defendant clearly disagreed with Plaintiff's Christian comments on the Allstate blog, Allstate never took any specific, overt disciplinary action against Plaintiff because of his comments;
   c. Plaintiff's blog comments, which were never removed, were posted under the blog editor's supervision, who has the authority to remove comments that do not meet the blog posting guidelines.

29.     As a result of the "Insufficient" down-rating precipitated by his religious blog comments, Allstate "fined" Plaintiff and, using an employer-created machination, took from him $ 8,867 of his bonus of $29,690 that he had already earned for 2015 because of his outstanding sales leadership in his field.

30.     On or about March 16, 2016, Plaintiff Wehrly filed his rebuttal of the performance evaluation with Allstate's Human Resources in its Illinois home office and understood that Jim Baca, Human Resources Senior Consultant, Centralized Employee Relations Team ("HRCert"), was tasked with investigating his complaint about his leadership skills being unreasonably down-rated in the 2015 performance evaluation because of his June 2015 religious comments in response to Allstate's LGBT blog.

31.     HRCert Investigator Baca either never performed an objective, diligent investigation into Plaintiff's complaint, or did so but failed to provide Plaintiff with a copy of the results of his investigation.

32.     To Plaintiff's understanding and knowledge, the 2015 performance evaluations "Inconsistent" leadership rating was never amended as a result of any HR investigation.

33.     After a May 6, 2016, Allstate Regional Accountability Meeting less than two months after Plaintiff filed his complaint about the negative leadership skills performance evaluation, Plaintiff was falsely accused of "workplace violence" by an Allstate Regional Market Operating Committee comprised of Cynthia Whitfield, Ed Clark, Wayne Crary, Eric Harvey, and Matt Phillips.

34.     Plaintiff—a 13-time Key Manager Winner—went into the meeting proud of his markets performance in April since his market was leading the territory in such key initiatives as Insurance Policies Sold (116%), Homeowner Plans sold (105%), Allstate Life & Retirement –

Production Credit (ranked third in region). In addition, Plaintiff was working on his 3rd appointment file, led the Region in hiring in 2015 with 5 appointments, and his market was on pace to win the Fast Start - 1st Quarter Promotion, a promotion his market ultimately won.

35. Despite his expectation of a positive meeting because of these statistics, the Accountability Meeting for Plaintiff was hostile and malicious from the very beginning, progressing like no other such meeting in which he had ever been involved in his three decades of Allstate meetings, with Regional Sales Leader Matt Phillips being extremely combative with Plaintiff, aggressively cutting him off when he tried to speak, repeatedly twisting Plaintiff's comments against him, and, ultimately, verbally attacking him personally and professionally in a very loud voice.

36. After Phillips completed his rant against Wehrly, one of the MOC members, Ed Clark, seated behind Plaintiff, advised him, "Bret do not respond."

37. After Phillips ceased his harangue, Plaintiff left the room followed by Eric Harvey, who asked him to remain with the other Field Sales Leaders for a while.

38. After Eric Harvey later gave Plaintiff permission to leave, he left for his four-and-a-half-hour trip home, during which trip he received a text from another Allstate employee who was not even at the Accountability Meeting, asking "What did you do?" about this supposedly confidential employee meeting.

39. Shortly after he arrived home, he was absolutely shocked to received notice from HRCert Tyrone Bernal that the MOC team he had just left had filed a false complaint of Workplace Violence against him, apparently in retaliation for his complaining about his 2015 "Insufficient" leadership down-rating—the down-rating that Eric Harvey had promised the previous November in retaliation for his religious comments on the Allstate LGBT blog.

8

40. Plaintiff was notified by HRCert Bernal that he, Plaintiff, was suspended while HR investigated the matter, warned that he was to have no communications at all with any Allstate agent or employee, and his laptop communication to the company was suspended for what ultimately became thirty days.

41. In response to HRCert Bernal's request, Plaintiff provided him with an account of what happened in the accountability meeting he attended and then asked Bernal to send a copy of the letter to an Allstate Senior Vice President for his review and oversight.

42. In further retaliation for his religious comments on the Allstate LGBT blog and the fabricated workplace violence issue, Allstate withdrew the workplace violence complaint and instead issued a July 5, 2016, "Unacceptable Notification - Behavior" letter to Plaintiff and for Plaintiff's personnel file, falsely claiming that he had made statements that "caused all of the leaders in the room to be concerned about the physical meeting environment and their safety." The Notification never expressed any indication that Plaintiff Wehrly did anything but talk; there was no allegation that he ever made any threatening or physical move or gesture against any person in that room.

43. On July 27, 2016, Plaintiff sent Allstate President Matt Winters an employee complaint and request for investigation, sending him a copy of the Unacceptable Notification letter and explaining in a separate letter the hostile and unreasonable treatment to which he had been subjected by his supervisors in response to his June 2015 religious comments about the Allstate LGBT blog.

44. Plaintiff received no response to his employee complaint request for investigation to Allstate Regional Sales Leader Matt Phillips.

45. On August 8, 2016, Plaintiff submitted an employee complaint and request for investigation to Allstate Senior Vice President of Integrity and Ethics Kelly Noll.

46. Plaintiff received no response to his employee complaint and request for investigation he sent to Allstate Senior Vice President of Integrity and Ethics Kelly Noll.

47. On August 10, 2016, Plaintiff submitted an employee complaint and request for investigation to Allstate corporate offices.

48. Plaintiff received no response to his employee complaint and request for investigation from the Allstate corporate offices.

49. On October 28, 2016, Plaintiff met via teleconference with Allstate HR Manager Bob Greve and Plaintiff's supervisor, TSL Eric Harvey, about the hostile treatment to which he had been subjected since his religious comments to the Allstate LGBT blog. The meeting had no positive results.

50. During that October teleconference, Plaintiff requested a hearing at the Home Office regarding the unreasonable and hostile treatment to which he had been subjected since his response to his employer's LGBT blog.

51. Plaintiff's request for a Home Office hearing was ignored.

52. On February 15, 2017, Defendant had his annual Performance Development Summary meeting, with Robert Mosely (Regional HR Manger) and the newly assigned Territory Sales Leader, Dallas Owen, to learn that his 2016 performance had been rated "Unacceptable"; that his already earned $ 6,800.00 bonus had been taken by Allstate as a "fine", making 2016 the only year in twenty-six years that he earned no bonus for his outstanding sales record.

53. On February 15, 2017, he learned that Allstate was imposing additional discipline against him, issuing and adding to his employee records a second Unacceptable Notification, this time for Performance.

54. On the same date, and without the company-required notice to Plaintiff, Defendant placed him on a 60-Day Letter, for the first time informing him of business requirements to be met by the end of April, a short two-and-a-half months later, or he would be terminated.

55. Had they been subjected to the same requirement, a majority of the then Field Sales Leaders would have been terminated.

56. Plaintiff did in fact meet the 60-day business requirements by April 30.

57. On October 24, 2017, Plaintiff met with his new Territory Sales Leader Dallas Owen, discussing with him the harassment and retaliation to which Plaintiff had been subjected and asking for a full hearing on the matter but was told by Owen that no action would be taken on Plaintiff's complaint.

58. On February 5, 2018, Plaintiff's supervisor, TSL Owen, notified Plaintiff for the first time that he must meet the business requirement of hiring a "Scratch Hire Appointment," a new agent with no assigned accounts, by the end of March or Plaintiff would be terminated. When Plaintiff asked Owen why Plaintiff had not been previously told of this requirement, Owen had no answer.

59. On February 9, 2018, Plaintiff had another hostile teleconference with TSL Owen, with Owen moving up the Scratch Hire deadline from the end of March to March 18, refusing to tell Plaintiff why Plaintiff had not been given previous notice of the requirement, and refusing to speak to Plaintiff of the harassing and hostile treatment to which he was being subjected because of his comments in response to Allstate's 2015 LGBT blog.

60. Plaintiff's performance evaluation for 2017 was administered by Regional Human Resources Manager Robert Mosely and Territory Sales Leader Dallas Owen on February 27, 2018, with no discussion of Plaintiff's outstanding market achievements, but his leadership skills once again being rated "insufficient" based upon false information and distorted facts.

61. After the 2017 performance evaluation, Defendant again "fined" Plaintiff, this time taking $18,000 of his already earned 2017 performance and leadership bonus.

62. On March 20, 2018, Plaintiff filed a complaint about the hostile 2017 performance evaluation, the false information contained in it, and the unjust leadership "insufficient" rating as had been promised by Eric Harvey in 2015 because of Plaintiff's religious comments in response to the company's LGBT blog posting.

63. In an April 6, 2018, meeting between Plaintiff and his supervisor, Dallas Owen, Owen deemed Plaintiff's request for a Home Office hearing to be adversarial to Allstate, mocked Plaintiff's October 2017 hearing request, intimating that there would be no investigation into his complaints of hostile treatment.

64. On May 4, 2018, Allstate terminated Plaintiff's employment because, in part, he failed to make a Scratch Hire appointment in the first quarter, despite his having achieved significant marketing achievements during the previous year and having accomplished, among others, the following achievements:

    a. Made 5 appointment during the previous 12 months.
    b. Ranked highest among Field Sales Leaders in the number of exclusive agent appointments.
    c. Received National Forum Invitation for May 14, 2018, Sales Leader Forum to be brought up on stage and recognized by all of Sales Leadership in the country for the 14 Key Manager Awards I had earned and for my Market Accomplishments in 2017.
    d. Received invitation to attend National Conference in Vancouver, BC. On May 30th to June 3rd of 2018.

    e.    Received invitation to attend Honor Ring trip in Cancun on June 14th – 17th of 2018.

    f.    In 2017, earned highest Field Sales Bonus in FSL career (prior to $18,000 discretion reduction).

65. Despite his long standing and award-winning success as a Field Sales Leader, during the Subject Period, Plaintiff was subjected to unrelenting and continuing harassment and hostile treatment by Defendant upper-level management and supervisors, a conspiracy to create trumped-up "inconsistent" leadership and behavior performance evaluations, his being placed on unjustified performance probations and suspensions, having had his already-earned performance bonuses misappropriated by Defendant, Defendant transferring his best sales force and then increasing his marketing goals, all with the goal of causing him to resign or building a false basis for termination.

66. Plaintiff suffered mental and emotional injury as well as significant financial loss as a result of Allstate's discrimination, retaliatory actions, and harassment of him in the wake of his religious comments to the Subject Blog and as a result of his reporting this unlawful treatment to Allstate supervisors, Human Resources Division, and upper management.

## CLAIMS

### COUNT 1
### Claim for Religious Discrimination
### (Title VII and Kentucky Civil Rights Act)

67. Plaintiff hereby incorporates the foregoing paragraphs as if fully set forth herein.

68. Plaintiff posted his religious viewpoint concerning Allstate's LGBT posting in response to Allstate's invitation for comments.

69. As a direct result of Plaintiff's posted religious comments, Defendant subjected him to religious discrimination and harassment in that his supervisors gave him less advantageous

terms and conditions of employment that given to other Allstate field sales leaders who did not post their religious views.

70. Defendant disciplined Plaintiff, gave him negative performance reviews, and ultimately terminated him for marketing, sales, and leadership actions that were, in fact, statistically much better than other FSLs who Allstate did not discipline or terminate.

71. Defendant refused to address in any meaningful way Plaintiff's numerous complaints of religious discrimination, harassment, and hostile work environment. Instead, Defendant subjected Plaintiff to retaliation because he complained about and refused to accept the secular favoritism and religiously charged work environment to which he was subjected.

73. Allstate engaged in a pattern and practice of unlawful religious discrimination and harassment by subjecting Plaintiff to a hostile work environment, in violation of Title VII of the Civil Rights Act of 1964 and Chapter 344, Kentucky Revised Statutes, which created an intimidating, oppressive, hostile and offensive work environment that interfered with Plaintiff's emotional well-being, and engaged in retaliation for Plaintiff's complaints about the wrongful conduct to which he was subjected.

74. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate religious harassment and discrimination from the workplace and to prevent it from occurring in the future.

75. As a direct and proximate result of Defendant's violations of Plaintiff's civil rights, Plaintiff has suffered damages, including loss of income and benefits; loss of quality and enjoyment of life; loss of reputation; and other damages to be proven at trial. Plaintiff is entitled to recover his compensatory damages pursuant to 42 U.S.C. §§ 1981a and 2000e-5 and KRS § 344.450.

## COUNT 2
### Religiously hostile workplace environment
### in violation of Title VII and KRS Chapter 344

76. Plaintiff hereby incorporates each of the allegations of paragraphs 1 through 75 as if fully restated herein.

77. Plaintiff Wehrly, a Christian, is a member of a protected class under (1) Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. Section 2000e *et seq.*; and (2) the Kentucky Civil Rights Act, KRS Chapter § 344.

78. Defendant Allstate is an "employer" within the meaning of Title VII of the Civil Rights Act of 1964 as set forth in 42 U.S.C. Section 2000e *et seq.*; and (2) the Kentucky Civil Rights Act, KRS Chapter 344.

79. On continuous and repeated occasions during the Subject Period of Plaintiff Wehrly's term of employment with Allstate, his supervisors, including but not limited to, Matt Phillips, Robert Mosley, Eric Harvey, and Dallas Owen subjected the Plaintiff to unwelcome and highly offensive conduct, intimidation, and insult of based upon Plaintiff's religious beliefs and his expression of his religious beliefs that was so severe and pervasive that it altered the conditions of his employment and otherwise created a religiously hostile work environment.

80. These unwelcome acts of a religious nature include, but are not limited to, intimidating communications from his supervisors to stop expressing his religious belief on an Allstate website open to employees, being assigned business requirements not assigned to other field sales leaders who did not express their religious beliefs, negative performance evaluations, "fines" that purportedly allowed Defendant to misappropriate Plaintiff's already earned sales and leadership bonuses for the Plaintiff's purported poor sales and leadership, and otherwise created a

religiously hostile working environment. Plaintiff was exposed to these intentional acts a described herein because of his religion.

81. The Plaintiff found Eric Harvey's and Matt Phillips' intentional, deliberate, and unwelcome acts based upon Plaintiff's expression of his religious beliefs as described herein to be highly offensive and considered these actions to create a religious hostile work environment. Moreover, a reasonable person would find Plaintiff Wehrly's work environment at Allstate to be hostile and abusive.

82. Defendant Allstate either knew or should have known that its Regional and Field Sales Leaders continuously engaged in inappropriate and highly offensive conduct in response to Plaintiff 's expression of his religious beliefs and should have prevented the harassment perpetrated upon Plaintiff by, among others, Eric Harvey, Dallas Owen, and Matt Phillips and failed to implement prompt and effective corrective action to stop the actions of these men, but instead encouraged their hostile conduct against Plaintiff for expressing his religious beliefs and participated in his performance evaluations down-ratings, perpetrating falsehoods about him engaging in workplace violence, issuing two Unacceptable Notifications for behavior and performance, and finally terminating his employment.

83. Defendant Allstate violated 42 U.S.C. section 20003-2 (Title VII of the Civil Rights Act of 1964) and KRS Chapter 344 by tolerating, condoning, and encouraging the religiously hostile workplace towards Plaintiff Wehrly.

84. As a direct and proximate result of Defendant's unlawful conduct, Plaintiff has suffered and will continue to suffer lost wages, bonuses, and benefits in the past and future, severe mental and emotional distress, loss of enjoyment of life, personal indignity, humiliation, and other non-pecuniary losses.

85. Defendant Allstate's conduct in allowing and encouraging a religious hostile workplace to exist without implementing prompt corrective action against Plaintiff's Allstate supervisors responsible for creating the hostile work environment is oppressive, malicious, exceptionally reprehensible, and demonstrated a total disregard for the rights and liberties of Plaintiff in violation of 42 U.S.C. section 2000e *et seq.*, and KRS Chapter 344.

## COUNT 3
### Retaliation

86. Plaintiff incorporates paragraphs 1 through 66 as if fully set forth herein.

87. Plaintiff engaged in protected activity under the KCRA and Title VII by making complaints to the Defendant, including complaints about its disparate treatment of him, protests regarding Defendant's enhanced scrutiny of his work and harassing conduct towards him all because of his religious comments about Defendant's LGBT blog.

88. Plaintiff was subjected to escalating adverse actions by the Defendant because he engaged in activity protected under the KRS Chapter 344 and Title VII.

89. A reasonable employee in Plaintiff's position would have found Defendant's actions materially adverse.

90. There exists a causal connection between Defendant's materially adverse actions toward Plaintiff and his engaging in protected activities.

91. The Defendant's conduct violated the KCRA's anti-retaliation provision (KRS 344.280) and Title VII's anti-retaliation provision 42 U.S.C. § 2000e-3(a).

92. But for Plaintiff's protests against its Title VII and KCRA religious discrimination and hostile work environment violations, Defendant would not have subjected him to the escalating adverse employment actions, including but not limited to discipline, workplace harassment, poor performance evaluations, fraudulent claims of workplace violence, notices of

unacceptable behavior being placed in his employment records, unpaid suspensions, and unlawful taking of already earned performance bonuses.

93. As a direct and proximate cause of the Defendant's actions described herein, Plaintiff has suffered from a loss of income and benefits, physical and emotional distress, and mental anxiety, for all of which he should be compensated.

94. Plaintiff is entitled to all relief, legal and equitable, available under the KCRA and Title VII.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully prays as follows:

1. That Defendant be served and required to answer within the time prescribed by law;

2. That this cause be tried by a jury;

3. That upon trial of this matter, Plaintiff be awarded judgment for damages of the lost compensation and bonuses he has suffered from the date of Defendant's unlawful actions in an amount to be proven at trial;

4. That the Court issue an award of front pay to Plaintiff in an amount to be proven at trial in lieu of reinstatement because the actions described herein and the circumstances surrounding the place of employment have made reinstatement impossible;

5. That Plaintiff be awarded additional compensatory damages, including but limited to, damages for emotional distress, pain and suffering, embarrassment, and humiliation in an amount to be proven at trial;

6. That costs and attorneys' fees be assessed against Defendant pursuant to 42 U.S.C. § 2000e-5(k) and Ky. Rev. Stat. § 344.450.

7. That costs and discretionary costs be taxed against Defendant;

8. The pre-judgment and post-judgment interest be assessed against Defendants, as provided by law;

9. That such other remedies as shall be necessary and property to eliminate all violations complained of herein be awarded as provided by law; and

10. For such other and further relief as the Court may deem just and proper.

Dated: May 19, 2021.    Respectfully submitted,

/s/ Randy J. Blankenship
Randy J. Blankenship, Esq. (#81924)
Blankenship Massey & Associates, PLLC
504 Erlanger Road
Erlanger, KY 41018
P: 859-426-9000
F: 859-426-9001
rblankenship@nkylawyers.com

and

Seth J. Kraus* (OBN: 0084003)
Gibbs & Associates Law Firm, LLC 6398
Thornberry Ct.
Mason, Ohio 45040
P: 513-234-5545
F: 888-500-4638
*Pro Hac Vice Motion forthcoming    skraus@gibbs-lawfirm.com

*Attorneys for Plaintiff*