UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
AT LEXINGTON

| | |
|---|---|
| BRET WEHRLY, | CIVIL ACTION NO. 5:21-135-KKC |
| **Plaintiff,** | |
| v. | **OPINION AND ORDER** |
| ALLSTATE INSURANCE COMPANY. | |
| **Defendant.** | |

*** *** ***

This matter is before the Court on a partial motion to dismiss (DE 17) by Defendant Allstate Insurance Company. Plaintiff Bret Wehrly having responded (DE 22) and Defendant having replied (DE 25), the matter is now ripe for the Court's review. For the reasons set forth herein, the motion (DE 17) is GRANTED.

## I. Background

**A. Factual Background**

According to Plaintiff's Complaint, Wehrly was an employee of Allstate from April 1984 to May 4, 2018.  (DE 1 at 3.)  Wehrly alleges that Allstate posted a blog and video on their internal company website on June 10, 2015 expressing support for members of the LGBT community and encouraging readers to leave a comment. Several days later, Wehrly left a comment expressing his views in support of the "biblical . . . historical and psychological arguments against homosexuality and gay marriage."[1]  (*Id.* at 5.)  Shortly thereafter, Wehrly allegedly received several calls from his supervisor, Eric Harvey, informing Wehrly that

---

[1] Wehrly's comment can be found in full at DE 17-1.

Harvey was directed by two members of Allstate management to contact him and ensure Wehrly did not post further comments on the blog. (*Id.*)

In November 2015, Wehrly claims that Harvey warned him that his "Leadership Skills" would be marked "Insufficient"[2] in his 2015 performance evaluation due to his comment on the blog. (*Id.* at 5–6.) This "Insufficient" rating apparently resulted in a bonus that was $8,867 lower than Wehrly otherwise would have received.[3] (*Id.* at 7.) In March

---

[2] In some places, Wehrly alleges that the rating was "Insufficient" (DE 1 at ¶¶ 24, 25, 29, 39, 60, 62) while in others he alleges the rating was "Inconsistent" (*Id.* at ¶¶ 26, 28, 65). Allstate ignores this discrepancy and refers to the rating as "Inconsistent" (DE 17 at 4, 7), leading to inaccurate citations to Wehrly's Complaint throughout. The Court will assume that the rating was "Insufficient" because that is the label used more frequently. The Court noticed additional inaccuracies elsewhere in the parties' filings. *See, e.g.*:

- Allstate's representation of DE 1 ¶ 22 as stating "the historical and physical arguments against homosexuality and gay marriage" when in fact DE 1 ¶ 22 says "the historical and *psychological* arguments against homosexuality and gay marriage." (DE 17 at 1.) (emphasis added)
- Wehrly's allegation that in February *2015*—four months before Wehrly's June 2015 blog comments—Harvey downrated Wehrly's leadership skills evaluation in retaliation for the blog comments. (DE 1 at 6 ¶ 26.)
- Allstate's contention as fact that "Allstate's Centralized Employee Relations Team investigated his allegations and determined that they were unsubstantiated. (DN 1 at ¶ 30-32)" when, in fact, those paragraphs of the Complaint allege that either an investigation never occurred or, if one did, Wehrly never received a copy of the results. (DE 17 at 5.)
- Allstate's reference to "Allstate HR Manager Bob Grove" (DE 17 at 6) when the Complaint refers to "Allstate HR Manager Bob Greve." (DE 1 at 10 ¶ 49.)
- Allstate's contention as fact that Wehrly received an "Unacceptable Notification" on February 21, 2017 (DE 17 at 6) when the Complaint indicates that this occurred on February 15, 2017. (DE 1 at 11 ¶ 53.)
- Allstate's citation to "(DN 1 at ¶ 22)" for the contention that "Wehrly alleges that Allstate asked Wehrly to stop posting 'comments on the LGBT blog' and to treat co-workers in a non-discriminatory manner" (DE 17 at 12; DE 25 at 8)—the quotation is actually contained in ¶ 23 and nowhere does Wehrly allege that Allstate asked him to stop treating his co-workers in a non-discriminatory manner.
- Wehrly's inaccurate citations his own Complaint. (DE 22 at 2.)
- Wehrly's citation to "(DN 1 at 23-25)" for the contention that Harvey told him "he could not be a leader at Allstate due to his religious beliefs about homosexuality and gay marriage" when those paragraphs actually allege that Harvey took issue with Wehrly's comments on the blog rather than with the religious beliefs themselves. (DE 22 at 7.)
- Wehrly's comment that "the Sixth Circuit denied a motion to dismiss" when, in fact, referring to a district court decision from the Western District of Kentucky. (DE 22 at 11.)

[3] Plaintiff describes this as a "fine" of $8,867, but he does not describe how Allstate calculates bonuses. Thus, it is unclear to the Court whether Allstate subtracted this amount from a total figure that Wehrly had earned independent of his performance evaluation, or whether Wehrly simply would have been entitled to a $8,867 greater bonus if he had received some higher rating on his performance evaluation.

2016, Wehrly filed a rebuttal to the performance evaluation with Allstate's human resources staff.  Wehrly indicates that he never received a copy of any investigation into his complaint if an investigation did, in fact, occur.  (*Id.*)

Two months later, in May, Wehrly says he was "falsely accused of 'workplace violence' by an Allstate Regional Market Operating Committee" at a meeting in which Regional Sales Leader Matt Phillips "[was] extremely combative with Plaintiff, aggressively cut[] him off when he tried to speak, repeatedly twist[ed] Plaintiff's comments against him, and, ultimately, verbally attack[ed] him personally and professionally in a very loud voice."  (*Id.* at 7–8.)  Wehrly was then contacted by a human resources staff member who informed him that the Market Operating Committee filed a workplace violence complaint against him, which Wehrly claims was false and in retaliation for his complaint about the 2015 performance evaluation.  (*Id.* at 8.)  Wehrly was suspended while the matter was investigated. In July, Allstate withdrew the workplace violence complaint and issued a letter for Wehrly's personnel file (an "Unacceptable Notification") indicating—falsely, according to Wehrly—that he made statements that "caused all of the leaders in the room to be concerned about the physical meeting environment and their safety."  (*Id.* at 9.)  Plaintiff sent complaints and requests for an investigation to Allstate's President, Senior Vice President of Integrity and Ethics, and corporate offices but received no response.

In October 2016, Plaintiff had a teleconference with Harvey and an Allstate HR manager, but the meeting "had no positive results."  (*Id.* at 10.)  Four months later, in February, a regional HR manager and Territory Sales Leader Dallas Owen informed Wehrly that his 2016 performance evaluation had been rated "Unacceptable."  (*Id.*) According to Wehrly, this rating deprived him of a $6,800 bonus he otherwise would have received, making 2016 the first year that he did not earn a bonus.  The same day, Allstate issued a second Unacceptable Notification, for performance, as well as a "60-Day Letter," which provided

3

business requirements for him to meet by the end of April to avoid termination. (*Id*. at 11.) Plaintiff met the requirements in the 60-Day Letter.

In October 2017, Wehrly met with Owen and asked for a full hearing to address the harassment and retaliation to which he felt subjected. (*Id*.) This request was apparently denied by Owen. Several months later, in February, Owen informed Wehrly that he had to hire a new agent by the end of March or face termination. Several days later—during what Wehrly describes as a "hostile teleconference"—Owen moved the deadline up to March 18.

Wehrly's 2017 performance evaluation, conducted by Owen and a regional HR manager, contained an "Insufficient" leadership skills rating, which led to $18,000 in lost bonus pay for Wehrly. (*Id*. at 12.) In March 2018, Wehrly filed a complaint about "the hostile 2017 performance evaluation, the false information contained in it, and the unjust leadership 'insufficient' rating[.]" (*Id*.) The next month, Owen allegedly told Wehrly that his request for a Home Office hearing was adversarial to Allstate and "mocked Plaintiff's October 2017 hearing request, intimating that there would be no investigation into his complaints of hostile treatment."

On May 4, 2018, Allstate terminated Wehrly "because, in part, he failed to make a Scratch Hire appointment in the first quarter, despite his having achieved significant marketing achievements during the previous year[.]" (*Id*.)

Overall, Wehrly alleges that he "was subjected to unrelenting and continuing harassment and hostile treatment by Defendant upper-level management and supervisors, a conspiracy to create trumped-up 'inconsistent' leadership and behavior performance evaluations, his being placed on unjustified performance probations and suspensions, having had his already-earned performance bonus misappropriated by Defendant, Defendant transferring his best sales force and then increasing his marketing goals, all with the goal of causing him to resign or building a false basis for termination." (*Id*. at 13.)

**B. Procedural Background**

Wehrly filed complaints with the Kentucky Commission on Human Rights ("KCHR") and the Equal Opportunity Employment Commission ("EEOC") in October 2018 and received dismissals in January and February 2021, respectively.  (DEs 1-2, 1-3, 1-4.)  Wehrly then filed a Complaint in this Court in May 2021, contending that he suffered "mental and emotional injury as well as significant financial loss as a result of Allstate's discrimination, retaliatory actions, and harassment of him in the wake of his religious comments to the Subject Blog and as a result of his reporting this unlawful treatment to Allstate supervisors, Human Resources Division, and upper management."  (DE 1 at 13.)

The Complaint alleges various causes of action as follows: (1) religious discrimination in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* ("Title VII") and the Kentucky Civil Rights Act, KRS 344.010 *et seq.* ("KCRA"); (2) a "religiously hostile workplace environment" in violation of Title VII and the KCRA; and (3) retaliation in violation of Title VII and the KCRA.  (*Id.* at 13–18.)

Allstate has filed a motion to dismiss (DE 17), Wehrly has responded (DE 22), and Allstate has replied.  (DE 25.)  The motion is now ripe for the Court's review.

**II. Motion to Dismiss Standard**

To survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. However, "a formulaic recitation of a cause of action's elements will not do." *Twombly*, 550 U.S. at 555. Courts "must construe the complaint in the light most favorable to the plaintiff and accept all allegations as true." *Keys v. Humana, Inc.*, 684 F.3d

605, 608 (6th Cir. 2012). Yet, at the same time, courts need not accept "legal conclusion[s] couched as [] factual allegation[s]." *Papasan v. Allain*, 478 U.S. 265, 286 (1986).

*Twombly* and *Iqbal* require a plaintiff to "plead facts sufficient to show that her claim has substantive plausibility." *Johnson v. City of Shelby*, 574, U.S. 10, 12 (2014). Where plaintiffs state "simply, concisely, and directly events that . . . entitle[] them to damages," the rules require "no more to stave off threshold dismissal for want of an adequate statement." *Id.*; *El-Hallani v. Huntington Nat. Bank*, 623 F. App'x 730, 739 (6th Cir. 2015) ("Although *Twombly* and *Iqbal* have raised the bar for pleading, it is still low."). Still, however, a complaint is subject to dismissal under Rule 12(b)(6) if it fails to plead facts that plausibly state a claim for relief. *See Cataldo v. U.S. Steel Corp.*, 676 F.3d 542, 547 (6th Cir. 2012).

In resolving the motion, the Court will consider the allegations in the complaint and may also consider certain other information, including "matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (quoting *Nieman v. NLO, Inc.*, 108 F.3d 1546, 1554 (6th Cir.1997)). Further, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Id.* (citation omitted).

### III. Analysis

#### A. Religious Discrimination Claim

Allstate first argues that Wehrly's Complaint does not allege facts sufficient to state a religious discrimination claim.  (DE 17 at 10–13.)  The Court agrees.

At the motion to dismiss stage, a Title VII religious discrimination cause of action must allege sufficient factual content from which a court, informed by its judicial experience and common sense, could draw the reasonable inference that an employer

discriminated against an employee with respect to his compensation, terms, conditions, or privileges of employment, *because of* his religion. *See Keys*, 684 F.3d at 610 (citing *Iqbal*, 556 U.S. at 678–79 and 42 U.S.C. § 2000e-2(a)(1)). To show that termination was *because of* his religion, the plaintiff "must show that it was the *religious* aspect of [his] [conduct] that motivated [his] employer's actions." *Pedreira v. Kentucky Baptist Homes for Children, Inc.*, 579 F.3d 722, 728 (6th Cir. 2009) (quoting *Hall v. Baptist Mem'l Health Care Corp.*, 215 F.3d 618, 627 (6th Cir. 2000)). Notably, at this stage in the proceedings, the plaintiff does not have to plead facts establishing a prima facie case under the burden-shifting framework articulated in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *Keys*, 684 F.3d at 609; *Pedreira*, 579 F.3d at 728. Nevertheless, looking at the elements of a religious discrimination claim is helpful to the Court in assessing whether the plaintiff has met his burden at this stage.

Absent direct evidence of discrimination, a plaintiff must initially demonstrate that: "(1) he is a member of a protected class; (2) he was qualified for his job; (3) he suffered an adverse employment decision; and (4) he was replaced by a person outside the protected class or treated differently than similarly situated non-protected employees." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 391 (6th Cir. 2008). In cases where a member of a majority demographic group—like Christians in Kentucky—alleges discrimination, the first prong is modified "to require that the plaintiff demonstrate 'background circumstances to support the suspicion that the defendant is that unusual employer who discriminates against the majority.'" *Nelson v. Ball Corp.*, 656 F. App'x 131, 134–35 (6th Cir. 2016) (quoting *Zambetti v. Cuyahoga Cmty. Coll.*, 314 F.3d 249, 255 (6th Cir. 2002)). Additionally, the fourth prong is modified "to require that the plaintiff show that he 'was treated

differently than similarly situated employees of a different [demographic group.]'" *Id.*
(quoting *Romans v. Mich. Dep't of Human Servs.*, 668 F.3d 826, 837 (6th Cir. 2012)).

Wehrly fails to meet even the low bar of *Iqbal*'s facial plausibility standard, as he
fails to allege sufficient factual content from which the Court could draw the reasonable
inference that Allstate discriminated against him because of his Christian faith. According
to Wehrly's Complaint, the only time that his religious beliefs were raised was in the
context of the 2015 conversation with Harvey in which Harvey attributed his poor
leadership skills evaluation to his comments on the blog.[4] (DE 1 at 5–6.)  Notably, even in
that instance, Wehrly does not allege that his poor evaluation was *because of* his religion,
but rather because of his comments, which included among others: "Psychology argues
against gay marriage. In nature/physically, clearly, men and women were designed to 'fit'
together sexually. . . . Nature argues against gay marriage. . . . There is perhaps no more
accurate description of the modern gay rights agenda than Romans 1:31, 'they are
senseless, faithless, heartless, ruthless.' . . . Gay marriage/same-sex marriage is a
perversion of the institution of marriage and an offense to the God who created marriage."
(DE 17-1.)  Wehrly himself describes his comments as not just religious in nature, but also
"the historical and psychological arguments against homosexuality and gay marriage."  (DE
1 at 5.)  Allstate's instruction that Wehrly should not post further comments was
reasonable given concerns about potential liability under Title VII for discrimination based
on sexual orientation. *See generally Bostock v. Clayton Cty., Georgia*, 140 S. Ct. 1731 (2020).

Wehrly does not allege that he was treated differently than members of other
religious groups or that there were any background circumstances indicating a pattern of
discriminatory conduct by Allstate or particular supervisors against Christians. In Wehrly's

---

[4] The 2015 conversation also would not be able to support a religious discrimination claim because it
is time-barred. *See infra* Section III.C.

Response, he states that he was treated differently than similarly situated employees (DE 22 at 8), but the paragraphs of the Complaint to which he cites only indicate that Wehrly was given business requirements to meet and that "[h]ad they been subjected to the same requirement, a majority of the then Field Sales Leaders would have been terminated."  (DE 1 at 11 ¶¶ 54–55.)  Wehrly's allegations simply do not allow the Court to draw a reasonable inference of discrimination as they must to avoid dismissal.

Because Wehrly fails to state a religious discrimination claim under Title VII, his KCRA religious discrimination claim is dismissed as well. *See Morris v. Oldham Cty. Fiscal Court*, 201 F.3d 784, 793 (6th Cir. 2000) ("The language of the KCRA generally tracks the language of Title VII and, thus, 'should be interpreted consonant with federal interpretation.'") (quoting *Meyers v. Chapman Printing Co.*, 840 S.W.2d 814, 820 (Ky. 1992)).

**B. Hostile Work Environment Claim**

Allstate next argues that Wehrly's Complaint does not allege facts sufficient to state a hostile work environment claim.  (DE 17 at 13–18.)  The Court again agrees.

Keeping in mind the pleading standard outlined above, it is nevertheless helpful to review the elements of a hostile work environment claim. To assert a cause of action under Title VII for a hostile work environment, a plaintiff must show: "(1) she was a member of a protected class; (2) she was subjected to unwelcomed harassment; (3) the harassment was based on [her protected class status]; (4) the harassment created a hostile work environment; and (5) employer liability. *Wyatt v. Nissan North America, Inc.*, 999 F.3d 400, 411 (6th Cir. 2021) (quoting *Ladd v. Grand Trunk Western R.R.*, 522 F.3d 495, 500 (6th Cir. 2009)). A hostile work environment exists when "the workplace is permeated with discriminatory intimidation, ridicule, and insult that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working

9

environment." *Smith v. Rock-Tenn Servs., Inc.*, 813 F.3d 298, 309 (6th Cir. 2016) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993)). In considering the totality of the circumstances, courts look at "the frequency of the discriminatory conduct; its severity; whether it [was] physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interfere[d] with an employee's performance." *Id.* (quoting *Randolph v. Ohio Dep't of Youth Servs.*, 453 F.3d 724, 733 (6th Cir. 2006)). The standards for judging hostility are "sufficiently demanding to ensure that Title VII does not become a general civility code. Properly applied, they will filter out complaints attacking the ordinary tribulations of the workplace, such as the sporadic use of abusive language, [religion]-related jokes, and occasional teasing." *Faragher v. City of Boca Raton*, 524 U.S. 775, 788 (1998) (internal quotation marks and citations omitted).

Wehrly's allegations are insufficient to meet his pleading burden. According to Wehrly's Complaint, Wehrly's comments on Allstate's LGBT blog were allowed to stay up, and Allstate "never took any specific, overt disciplinary action against Plaintiff because of his comments"—he was simply told not to post any further comments on the blog. (DE 1 at 5–6.) Wehrly also alleges that he received a rating of "Insufficient" on the "Leadership Skills" section of his 2015 performance review "because of his comments[.]" (*Id.* at 6.) While Wehrly alleges that various actions by supervisors were retaliation for his complaints about the 2015 performance review, Wehrly does not allege a single "discriminatory intimidation, ridicule, [or] insult" based on his religion, and he certainly does not allege that the workplace was "permeated" with such behavior. *Harris*, 510 U.S. at 21. Even construed in a light most favorable to Wehrly, Wehrly's Complaint fails to plausibly state a hostile work environment claim because it fails to allege any discriminatory harassment on the basis of his religion. Accordingly, that claim is dismissed.

Because Wehrly fails to state a hostile work environment claim under Title VII, his KCRA hostile work environment claim is dismissed as well. *See Morris*, 201 F.3d at 793.

## C. Time Barred Claims

Allstate moves to dismiss certain of Wehrly's Title VII and KCRA claims on statute of limitations grounds.  (DE 17 at 8–10.)  As to the Title VII and KCRA retaliation claims— which are the only claims that remain—Wehrly agrees.  (DE 22 at 4.)

Generally, a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6)— which considers only the allegations in the complaint—is "an 'inappropriate vehicle' for dismissing a claim based upon a statute of limitations." *Lutz v. Chesapeake Appalachia, L.L.C.*, 717 F.3d 459, 464 (6th Cir. 2013) (quoting *Cataldo*, 676 F.3d at 547). But, "dismissal is warranted if 'the allegations in the complaint affirmatively show that the claim is time-barred.'" *Id.*

In Kentucky, Title VII claims dual-filed with the EEOC and KCHR—like Wehrly's— must be filed within 300 days of the alleged unlawful employment practice. *Amini*, 259 F.3d at 498; *Jones v. AIRCO Carbide Chem Co.*, 691 F.2d 1200, 1201 (6th Cir. 1982) ("Kentucky is a 'deferral' state so that the 300-day filing limitation is applicable if the aggrieved person initially institutes proceedings with the appropriate state agency."). Wehrly filed his Charge of Discrimination on October 10, 2018 (DE 1 at 3), so the discrete acts of his Title VII retaliation claims are time-barred and thus dismissed as to any adverse employment action that occurred before December 14, 2017. Wehrly's Title VII retaliation claims for acts that occurred on or after December 14, 2017 remain.

KCRA claims are governed by a five-year statute of limitations period. *Ammerman v. Board of Educ.*, 30 S.W.3d 793, 798 (Ky. 2000) (citing KRS 413.120(2)). Wehrly filed his Complaint on May 19, 2021 (DE 1), so the discrete acts of his retaliation claims are time-

barred and thus dismissed as to any adverse employment action that occurred before May 19, 2016. Wehrly's KCRA retaliation claims for acts that occurred on or after May 19, 2016 remain.

**D. Leave to Amend Complaint**

Finally, Wehrly asks the Court to grant him leave to amend his complaint instead of dismissing it.  (DE 22 at 12.)  In support of his request, Wehrly provides the Fed. R. Civ. P. 15(a)(2) standard, a quote from *Foman v. Davis*, 371 U.S. 178, 182 (1962), and the statement: "The challenges Wehrly makes to Allstate's adverse employment actions against him remain a proper subject for relief by this Court. The Court should therefore freely grant Plaintiff leave to amend his complaint instead of dismissing it."  (DE 22 at 12.)

A request for leave to amend under Fed. R. Civ. P. 15(a) is governed by Fed. R. Civ. P. 7(b), which requires that a motion shall state the grounds for its merit with particularity. *Evans v. Pearson Enter., Inc.*, 434 F.3d 839, 853 (6th Cir. 2006). A request for leave to amend without providing grounds or a proposed amended complaint does not satisfy the particularity requirement. *Id.* Implicit in Rule 15(a) is that the district court must "have before it the substance of the proposed amendment" in order to determine whether "justice so requires" an amendment. *Beydoun v. Sessions*, 871 F.3d 459, 469 (6th Cir. 2017) (quoting *Roskam Baking Co., Inc. v. Lanham Machinery Co., Inc.*, 288 F.3d 895, 906 (6th Cir. 2002)). A bare request for leave to amend in an opposition to a motion to dismiss that does not include the particular grounds on which amendment is sought does not constitute a motion within the contemplation of Rule 15(a). *Id.* Plaintiffs are "not entitled to an advisory opinion from the district court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." *Patterson v. Novartis Pharmaceuticals Corp.*, 451

Fed. App'x 495, 499 (6th Cir. 2011) (quoting *Winget v. JP Morgan Chase Bank, N.A.*, 537 F.3d 565, 573 (6th Cir. 2008)).

Because Wehrly does not provide any grounds to support his request, Wehrly's bare request for leave to amend is denied.

### IV. Conclusion

Accordingly, for the reasons set forth herein, **IT IS HEREBY ORDERED**:

(1) Defendant Allstate's Partial Motion to Dismiss (DE 17) is **GRANTED**;

(2) Consistent with the above rulings, the Court **DISMISSES** all claims from Plaintiff's Complaint (DE 1) **except** those found in Count 3, which are limited as follows: the Title VII retaliation claims remain for acts that occurred on or after December 14, 2017, and the KCRA retaliation claims remain for acts that occurred on or after May 19, 2016.

This 1st day of February, 2022.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY