**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
LEXINGTON**

| | |
|---|---|
| **BRET WEHRLY,** | **CIVIL ACTION NO. 5:21-135-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION AND ORDER** |
| **ALLSTATE INSURANCE COMPANY,** | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on defendant Allstate Insurance Company's motion for summary judgment. (DE 48). For the following reasons, the Court will GRANT the motion.

**I. Facts and Procedural Background**

In this retaliation action Plaintiff Bret Wehrly, a former sales employee of Allstate, alleges that Allstate fired him after he complained of disparate treatment because of his outspoken Christian beliefs. Allstate denies that Wehrly's beliefs or his complaints to superiors had anything to do with his termination and moves for summary judgment.

The facts of this case were detailed in the Court's February 1, 2022 opinion and order (DE 26) and the pertinent facts will be recounted in more detail in the foregoing analysis. On March 3, 2015, Allstate published a video on a company blog entitled "Love Has No Labels." Wehrly made multiple comments, the majority of which quoted Biblical scripture and discussed God, Jesus, and their ideas of love. (*See* DE 48, Ex. 10). On June 10, 2015, Allstate made another post entitled "Allstate starts movement to join hands in support of LGBT message." Wehrly again made multiple comments, including: "I would like The Ten Commandments posted on our website"; "It is clear . . . that the Bible condemns homosexuality as an immoral and unnatural sin . . . Leviticus

1

18:22 identifies homosexual sex as an abomination, a detestable sin." The comments were voluminous. (DE 48, Ex. 11). Wehrly also responded to other commenters, saying "I asked to have today's posting removed. I would only hope and pray that you would read the content." (*Id.*). Though the majority of the other commenters supported Allstate's post, a handful stated agreement with Wehrly. (*See id.*).

During a meeting on November 6, 2015, Territorial Sales Leader (TSL) Eric Harvey told Wehrly that he planned to downgrade Wehrly's leadership skills ratings to "insufficient." (DE 53-1 at 83). According to Wehrly, Harvey said that this was "because of your blog post on the LGBT website." (*Id.* at 84). Wehrly said that Harvey implied that regional leadership was upset about the comments, and all involved noted that several Allstate employees had complained about Wehrly's posts. (*Id.* at 118). According to Wehrly, Harvey instructed him to "not make waves" and to "stay off the blogs and that kind of thing." (*Id.* at 120). Harvey never mentioned Wehrly's religion or religious views during this meeting. (*Id.* at 115). Wehrly stated that nobody else from Allstate ever mentioned the blog comments or his religious beliefs during his employment. (*Id.* at 133-34).

Following this meeting, Allstate issued Wehrly a rating of "Inconsistent" for some benchmarks in his final 2015 performance review, including the majority of the leadership categories and his overall business goal rating. (DE 48, Ex. 12). His superiors' comments did not mention the blog post and instead mirrored many of those found in his 2013 and 2014 performance reviews—that Wehrly can be defensive, unapproachable, etc. (*Id.*). Wehrly disagreed with that evaluation. Wehrly specifically stated that he believed the performance ratings were motivated by his Christian religion and his comments on the blog posts. Wehrly complained that he (and other employees) had been "talked down to, hated and now persecuted for standing up for my Christian

2

beliefs." (*Id.* at 9). In fact, the entire thrust of Wehrly's disagreement with the performance evaluation was that he was being persecuted for his outspoken Christian beliefs.

In March and April of 2016, Wehrly sent a series of emails to HR Senior Consultant Jim Baca wherein he complained of discriminatory treatment. Wehrly stated that "the [performance evaluation] is now being used as a weapon to punish employees for any Christian speech." (DE 48, Ex. 13 at 2).

On May 6, 2016, there was some disagreement between Wehrly and several other employees at a company meeting. For this, Wehrly received an Unacceptable Notification Letter in which he was admonished for "acting inappropriately." According to the letter, Wehrly's words, tone, and body language were "beyond unacceptable" and the meeting ended with Wehrly being "escorted to [his] car." (DE 48-16 at 2-3). Allstate noted that "unprofessional behavior, such as making inappropriate and/or unprofessional comments, or engaging in intimidating behaviors, or refusing to follow management direction in the course of your job responsibilities with Allstate will not be tolerated." (*Id.* at 3). Wehrly disputed that he ever conducted himself in an unprofessional manner and again reiterated that he believed the primary motivations of all involved were discriminatory. In a response to the letter, Wehrly stated that "it appears that violation of federal law is no big deal to this Region. It appears that discrimination is not okay at Allstate except when it comes to Christians." (DE 48-16 at 4).

Allstate placed Wehrly on "Unacceptable Notification" for poor performance on February 21, 2017. He successfully met his requirements to come off that but soon failed again to hit certain performance targets. Wehrly continued to argue back and forth with Allstate management about his performance and Wehrly's perception of disparate treatment. Upon failure to hit certain goals, Allstate fired Wehrly in May of 2018.

In his original complaint, Wehrly asserted three counts: (1) religious discrimination under Title VII, (2) religiously hostile workplace environment in violation of Title VII and KRS Chapter 344, and (3) retaliation in violation of Title VII and KRS 344.280. (DE 1). Allstate filed a partial motion to dismiss aimed at counts (1) and (2), which the Court granted. (DE 26). The Court determined that Wehrly failed to allege sufficient facts that Allstate discriminated against him because of his Christian faith. (*Id.* at 8). As to his hostile work environment claim, the Court found that Wehrly failed to allege any discriminatory harassment on the basis of his religion, nor did he allege facts that his workplace was permeated with such behavior. (*Id.* at 10). The Court also dismissed a portion of his count (3) Title VII and KCRA retaliation claims as time-barred. (*Id.* at 11-12). Therefore, what remains on this motion for summary judgment are Wehrly's Title VII retaliation claims for acts that occurred on or after December 14, 2017, and the KCRA retaliation claims for acts that occurred on or after May 19, 2016.

## II. Standard

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). In deciding a motion for summary judgment, the Court views the factual evidence and draws all reasonable inferences in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court must "determine whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Parrett v. Am. Ship Bldg. Co.*, 990 F.2d 854, 858 (6th Cir. 1993).

A mere scintilla of evidence is insufficient; "there must be evidence on which the jury could reasonably find for the [non-movant]." *B.F. Goodrich Co. v. U.S. Filter Corp.*, 245 F.3d 587, 592 (6th Cir. 2001). If the evidence presented in opposition to summary judgment is merely colorable, or is not significantly probative, then summary judgment is proper. *Anderson*, 477 U.S. at 249–50. At this stage, however,   it is not the Court's job to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial. *McGuire v. Michigan Dep't of Cmty. Health*, 526 F. App'x 494, 497 (6th Cir. 2013). Still, plausible allegations are not enough to defeat a properly supported summary judgment motion. "The nonmoving party must set forth *sufficient specific* evidence to permit a fair-minded jury to return a verdict in its favor." *Mount v. United States Postal Serv.*, 79 F.3d 531, 533 (6th Cir. 1996) (emphasis added).

### III. Retaliation

Retaliation claims under the KCRA are evaluated under the same standard as federal Title VII claims. *Montell v. Diversified Clinical Servs., Inc.*, 757 F.3d 497, 504 (6th Cir. 2014). Because Wehrly is attempting to prove retaliation through circumstantial evidence, his claims are evaluated using the burden-shifting framework of *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 801–05 (1973). Under that framework, Wehrly must show that he (1) engaged in a protected activity, (2) that Allstate knew of his protected conduct, (3) that Allstate took an adverse employment action against him after his protected conduct, and (4) that there was a causal connection between the exercise of Wehrly's protected right and the adverse action. *Id.* (citing *Hamilton v. General Elec. Co.*, 556 F.3d 428, 433 (6th Cir. 2009).

If Wehrly makes out this prima facie case, the burden shifts to Allstate to produce a legitimate, non-retaliatory reason for its action. *See id.* If Allstate can do so, the burden shifts back

to Wehrly provide evidence from which a reasonable jury could conclude that Allstate's reason was merely pretextual. *Id.*

## A. Protected activity

Allstate argues that Wehrly did not engage in a protected activity and thus cannot clear the first hurdle in his prima facie case. Under Title VII, an employee is protected against employer retaliation for opposing any practice that the employee reasonably believes to be a violation of Title VII. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000). Retaliation in violation of Title VII can be found whether or not the challenged practice ultimately is found to be unlawful. *Id.* at 579-80. Conduct protected under Title VII includes complaining to anyone about allegedly unlawful practices, but the manner of opposition must be reasonable and the opposition must be based on a "reasonable and good faith belief that the opposed practices were unlawful." *Id.* Title VII does not protect an employee if his opposition is merely a "vague charge of discrimination." *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989). But this does not require that an employee lodge his complaint "with absolute formality, clarity, or precision." *Stevens v. Saint Elizabeth Med. Ctr., Inc.*, 533 Fed. Appx. 624, 631 (6th Cir.2013).

Wehrly claims he engaged in a protected activity when he made complaints to his superiors at Allstate about disparate treatment, enhanced scrutiny of his work, and harassment due to his religion. Specifically, Wehrly states that "shortly after the June 2015 publication of his LGBT blog until his 2018 termination, he repeatedly raised these complaints of religious discrimination and retaliatory harassment directly to his supervisors." (DE 53 at 5-6).

Allstate argues that there is no evidence that it discriminated against Wehrly due to his religion, that Wehrly cannot rely on a single conversation with a supervisor (about the blog comments) to support his claim, and that no other Christian employees were disciplined for their

views. But all Wehrly has to do to support his prima facie case is show that the facts, in the light most favorable to him, establish he had a reasonable belief that he was opposing an unlawful practice. This is not a high hurdle to clear, as "the issue of [reasonableness in retaliation cases] should be decided as a matter of law only when no reasonable person could have believed that the facts known to the employee amounted to a violation or otherwise justified the employee's belief that illegal conduct was occurring." *Yazdian v. ConMed Endoscopic Techs., Inc.*, 793 F.3d 634, 647 (6th Cir. 2015) (discussing the reasonableness of opposition standard in a hostile work environment matter).

Here, Wehrly posted religiously charged comments on an Allstate company blog post and was soon after reprimanded. A superior specifically admonished him for his blog comments. Allstate gave Wehrly negative performance reviews. Wehrly made complaints about his treatment. He even stated, in a comment on his "Unacceptable Notification Letter," that he "did know that the TSL violated federal law." (DE 48, Ex. 16 at 4). He went on to say "let's summarize what is going on here . . . Allstate . . . violates Federal Law religious discrimination [and then] Allstate Leadership retaliates against employee with false accusations." (*Id.* at 5). Even if there were legitimate, non-discriminatory motivations for Allstate's conduct, those considerations are reserved for the latter part of the Court's analysis. The Court cannot say, as a matter of law, that no reasonable person would have thought that they were the target of an unlawful employer action. Accordingly, Wehrly did engage in a protected activity for the purposes of his Title VII and KCRA claims.

### B. Allstate's knowledge of a protected activity

But this does not end the inquiry. An employer must be on notice of an employee's protected activity. Allstate states, correctly, that vague charges of discrimination are not enough

to constitute opposition to an unlawful employment practice. *Booker v. Brown & Williamson Tobacco Co.*, 879 F.2d 1304, 1313 (6th Cir. 1989); *Fox v. Eagle Distrib. Co.*, 510 F.3d 587, 592 (6th Cir. 2007). To this point, the religious nature of Wehrly's complaints are important. It is uncontroverted that at the initial meeting with Harvey in November 2015, Harvey did not mention Wehrly's religion—*nor did Wehrly bring it up*. (DE 48, Ex. A at 114-15). In fact, Wehrly testified that his religious views were never brought up—by anyone—at any time following the November 2015 meeting. (*Id.* at 136). In his response to his poor 2015 performance review, however, Wehrly specifically and emphatically accused Allstate supervisors of persecuting him for his outspoken Christian beliefs. (*See* DE 48, Ex. 12 at 9). A few months later, Wehrly again complained that "the [performance evaluation] is now being used as a weapon to punish employees for any Christian speech." (DE 48, Ex. 13 at 2). In an interview with HR, he again complained that his negative performance evaluations were not due to his performance but because Eric Harvey had a "hating mentality" and was looking for a reason to downrate him. (DE 48, Ex. 14 at 4). This came in the context of a discussion about Wehrly's blog comments and the previous emails explicitly complaining of religious bias.

It is also notable that Wehrly's claims of religious discrimination were not vague as to cause and effect. Allstate's reliance on *Booker* and *Fox* is misplaced. Wehrly did not lodge broad charges of "ethnocism" without a link to some chain of events like the plaintiff in *Booker*. Nor did he complain of disparate treatment without mentioning the actual class-based reason for the discrimination like the plaintiff in *Fox*. Wehrly specifically cited the blog comments, the meeting with Harvey, and his subsequent reviews when he complained, on numerous occasions, that his Christian beliefs were motivating Allstate's actions.

Allstate acknowledges that, in order to fall under the Title VII umbrella, an employee's complaints must go beyond that of unequal treatment and specifically complain about discrimination. *See Booker*, 879 F.2d at 1313. But Wehrly did just that. Accordingly, Wehrly's persistent accusations of disparate treatment due to his outspoken Christian beliefs are enough to satisfy the knowledge prong of the prima facie analysis.

### C. Causal connection

Of course, the fact that Wehrly did engage in protected activity does not mean that he makes a prima facie showing of retaliation. There must be a causal connection between that protected activity and the adverse employment action.[1] To prove causation, Wehrly must show that his protected activity was a "but for" cause of the employer's adverse action against him, "meaning the adverse action would not have occurred absent the employer's desire to retaliate." *George v. Youngstown State Univ.*, 966 F.3d 446, 459 (6th Cir. 2020) (citing *Univ. of Tex. Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 352, 360 (2013)). Like all of the prongs of the plaintiff's prima facie case of retaliation, the burden here is not an onerous one. *Id.* Still, the plaintiff must produce sufficient evidence from which an inference can be drawn that he would not have been fired absent his protected activity.

One of the primary ways a plaintiff can meet his burden is through temporal proximity—that the adverse action was taken shortly after the plaintiff's exercise of protected rights. *Nguyen v. City of Cleveland,* 229 F.3d 559, 563 (6th Cir. 2000). Here, Wehrly cannot rely on proximity. He first complained of religious discrimination when he lodged his disagreements with his 2015 performance review. He renewed those complaints in 2016 and 2017 in his comments to his performance reviews and through an HR complaint in March of 2018—albeit more vaguely in

---

[1] Wehrly was fired, so nobody disputes that Allstate took an adverse employment action.

those instances. (*See* DEs 48-17 & 48-21). He was fired on May 4, 2018. Though Wehrly kept up his complaints, roughly two and half years elapsed between his first religious discrimination complaints and his termination.

In assessing causality, however, no one factor is dispositive. *Davis v. Rich Prod. Corp.*, 11 F. App'x 441, 445 (6th Cir. 2001). So a plaintiff can successfully show a causal connection even if years passed between the protected activity and the adverse employment action. *See Ballanger v. Bunge Foods*, 238 F.3d 419 (6th Cir. 2000) (holding the existence of a causal connection despite a three-year lapse). This still requires that a plaintiff put forth sufficient evidence to establish some connection. Again however, as is true with all of the elements of a prima facie retaliation case, the bar is low. Further, "the court should look only to the plaintiff's evidence to determine whether or not the plaintiff has established a prima facie case of retaliation." *Ballanger*, 238 F.3d at *2. Analysis of the employer's reasons for termination and the strength or weakness of the plaintiff's claims of pretext are better left for the tail end of the *McDonnell Douglas* analysis. *See Cline v. Cath. Diocese of Toledo*, 206 F.3d 651, 663 n.7 (6th Cir. 2000) (collecting cases).

Here, Wehrly provides that he worked for Allstate for nearly three decades and was fired a couple of years after complaining of discriminatory treatment for his vocal Christianity. On one occasion, a manager did discuss his religiously charged blog posts and cautioned against further similar comments. Wehrly continued his claims of religious discrimination for the years between the blog post and his termination. At this point, despite the gap between the protected activity and the adverse employment action, it would be improper for the Court to decide as a matter of law that no jury could infer a causal connection.

Accordingly, the Court finds that Wehrly has just cleared the low bar to establish a prima facie case of retaliation.

### D. Legitimate, non-retaliatory reasons for termination and alleged pretext

Legitimate, non-discriminatory reasons for terminating an employee include poor performance and violations of work rules and policies. *See Abdulnour v. Campbell Soup Supply Co.*, LLC, 502 F.3d 496, 502 (6th Cir. 2007); *Strickland v. City of Detroit*, 995 F.3d 495, 512 (6th Cir. 2021). Allstate submits that Wehrly failed to achieve objective performance goals—specifically that he "only met 39% of his production credit plan and 57.2% of his insurance products sold plan, and failed to have a Scratch Hire by the end of the first quarter of 2018." (DE 48-1 at 32-33). Wehrly does not dispute this.

Wehrly argues that this reason was merely pretextual. "A plaintiff can show pretext in three interrelated ways: (1) that the proffered reasons had no basis in fact, (2) that the proffered reasons did not actually motivate the employer's action, or (3) that they were insufficient to motivate the employer's action." *Chen v. Dow Chem. Co.*, 580 F.3d 394, 400 (6th Cir. 2009). Wehrly states that Allstate's proffered reason was insufficient and did not motivate his termination.

As a general matter, if an employer has an "honest belief" in the nondiscriminatory basis upon which it has made its employment decision, then the employee will not be able to establish pretext. *Majewski v. Automatic Data Processing, Inc.*, 274 F.3d 1106, 1117 (6th Cir. 2001). The key inquiry is "whether the employer made a reasonably informed and considered decision before taking the complained-of action." *Michael v. Caterpillar Fin. Servs. Corp.*, 496 F.3d 584, 598–99 (6th Cir. 2007). Wehrly offers no evidence—or even a real argument—that Allstate's decision to fire him was ill-informed or ill-considered. Nor could he, as the evidence of his underperformance and workplace discord is substantial. "[A] case alleging unlawful retaliation is not a vehicle for litigating the accuracy of the employer's grounds for termination. Instead, the employee also must offer some evidence that not only were the employer's reasons false, but that retaliation was the

11

real reason for the adverse action. *Tingle v. Arbors at Hilliard*, 692 F.3d 523, 530 (6th Cir. 2012) (citing *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515 (1993)).

Wehrly states that he was a longtime employee with very few subpar ratings and that he received the bulk of the downgraded ratings after the issue with the blog comments. He makes a conclusory argument that his eventual termination was retaliatory. He does not offer sufficient evidence of pretext. The evidence overwhelmingly shows that Wehrly had been underperforming for years before his termination and that no reasonable juror could conclude that Allstate's reasons for firing him were merely pretext. There is simply too much in the record to support Allstate's argument and Wehrly's evidence to the contrary is merely colorable, at best.

In his 2013 final review, Allstate gave Wehrly off-target and inconsistent ratings on multiple areas of review—including those involving leadership. The manager comments on his 2013 final review stated that "there have been instances that Bret can become overly emotional when addressing the agents in his market" and that "this behavior can be counterproductive to the morale of the agents and create an uncomfortable climate to conduct business." (DE 48-5 at 6-7). Further, Allstate noted that "Bret also has conflicts with an EFS in his market" and "Bret has often had instances where partnerships were dismantled based upon lack of open communication and agreement among all parties." (*Id.* at 9). By 2014, most of his final review grades were "on target" and "expected," with only one rating of "inconsistent."

In his 2015 final review, Wehrly received various "inconsistent" ratings based on his sale performance and his interpersonal relationships. His manager noted that "if there are differences of opinions Bret can sometimes take a defensive posture feeling that his opinions are not supported." (DE 48-12 at 7). Further, Wehrly's overall business ranking for the 2015 period was 18 of 26 amongst his regional peers. (*Id.*). This marks the point at which Wehrly first complained

of religious targeting, and thus the basis for the alleged retaliation. The evidence shows that Wehrly had struggled at many aspects of his job before any retaliation relevant to this action could have occurred.

Then there is the May 6, 2016 incident. Wehrly says this is more evidence of discrimination. There is some dispute as to what actually happened at this meeting, but the dispute is not material to the issue of pretext. It does perhaps reinforce Wehrly's prima facie case in that Allstate was certainly aware of his complaints of religious discrimination. But it also establishes that there was friction between Wehrly and multiple other Allstate employees for a while before his termination. Wehrly does not dispute that he received an Unacceptable Notification letter or that this incident never happened. He merely argues that the defendants painted their version of the incident with a discriminatory brush. If this incident occurred closer to his termination it may have had some bearing on the pretext analysis. But two years elapsed between this incident and Wehrly's eventual termination.

What happened in that two years were more substandard reviews (*see* DE 48-17) and evidence of measured and considerate concern for Wehrly's performance on Allstate's part. He was placed on "Unacceptable Notification" and completed the requirements in April of 2017. Yet his performance continued to decline. Allstate assigned a manager to "provide coaching" to Wehrly to address his "declining performance" in February of 2018. (DE 48-20). The evidence shows a long trail of communications between Allstate's management about Wehrly's problems at work and their attempts to reconcile his disputes. (*See* DEs 48-20 to 48-24). By mid-March of 2018, Wehrly's managers notified him that he was well behind his benchmarks and that his sales results were "increasingly concerning." (DE 48-26 at 1). Further, management informed him that "as a reminder of our previous conversations, if your performance falls to an unacceptable level at

13

any time during the 12 months following the completion of your 2017 Unacceptable Notification, your employment could be terminated." (*Id.* at 2). In Wehrly's termination request, Allstate Employee Relations Team member Juan Cortex stated that his various production levels were at either the lowest or next to lowest levels as compared to his peers in the region. (DE 48-19). Wehrly does not provide sufficient evidence to dispute any of Allstate's performance benchmark calculations. In fact, Wehrly does little to rebut this mountain of evidence at all.

Finally, it is undisputed that Wehrly received some substandard grades on year-end performance evaluations prior to the blog comments at the heart of this matter. It is also undisputed that Wehrly complained of threatening and inequitable treatment in 2014—a year before the blog comments at issue here. Wehrly claimed that he was retaliated against based on his objections to his 2013 performance review. Religious beliefs or perceived religious discrimination had nothing to do with these retaliation allegations. (*See* DEs 48-6, 48-7, 48-8). This not only bolsters Allstate's argument that there were legitimate, non-discriminatory reasons for Wehrly's termination—it also severely undercuts Wehrly's argument that Allstate's reasons were merely pretextual. In short, Allstate took issue with Wehrly's performance and Wehrly lodged complaints about his negative reviews well before any allegations of religious discrimination or retaliation became relevant. It makes little sense that Allstate began to construct pretextual reasons to fire Wehrly years before he ever complained of disparate treatment due to his religion. Moreover, Wehrly's assertion that Allstate retained him for nearly three years following his blog comments and first complaints of religious discrimination simply to build a pretextual reason for termination strains credulity. No reasonable juror could come to that conclusion based on the evidence presented.

Whether Wehrly can establish a causal connection and meet his prima facie burden is a close call. But even if Wehrly can make out a bare case, his retaliation claim fails. Allstate has

14

presented substantial evidence of non-retaliatory reasons for his termination, and Wehrly has provided only unreasonable speculation as evidence of pretext. Accordingly, the Court hereby ORDERS as follows:

1.  Allstate's motion for summary judgment on the remaining retaliation claim (DE 48) is GRANTED.

2.  Allstate's motion in limine at (DE 62) is DENIED AS MOOT.

3.  The Pretrial Conference and Jury Trial are canceled.

This 18th day of July, 2023.

KAREN K. CALDWELL
UNITED STATES DISTRICT JUDGE
EASTERN DISTRICT OF KENTUCKY